IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| NRT TECHNOLOGY CORP. and NRT TECHNOLOGIES, INC., ) ) ) Plaintiffs, ) ) v. ) ) EVERI HOLDINGS INC. f/k/a Global Cash ) Access Holdings, Inc. and EVERI PAYMENTS ) INC. f/k/a Global Cash Access, Inc., ) ) Defendants. ) | C.A. No. 19-804-MN-JLH |

## REPORT AND RECOMMENDATION

There are two motions pending before the Court: a motion to dismiss filed by Defendants Everi Holdings Inc. and Everi Payments Inc. (D.I. 12); and a motion seeking leave to file a first amended complaint and for an extension of time to complete service filed by Plaintiffs NRT Technology Corp. and NRT Technologies, Inc. (D.I. 18). As announced at the hearing on June 5, 2020, I recommend DENYING Defendants' motion to dismiss. In accordance with that recommendation, I also recommend DENYING Plaintiffs' motion as moot. My Report and Recommendation was announced from the bench at the conclusion of the hearing as follows:

> I'm prepared to issue a report and recommendation on the pending motions. I will not be issuing a separate written report, but I will issue a report and recommendation that incorporates by reference my oral rulings today.
>
> I want to emphasize before I get into the ruling that while I'm not issuing a separate written opinion, we have followed a full process for making the decisions that I'm about to state. There was full briefing on both motions. We also had nearly a two-hour oral argument today. And all of the submissions and arguments have been carefully considered.
>
> For the reasons that I am about to state, I recommend that the Court deny Everi's motion to dismiss. In accordance with that

ruling, I recommend that NRT's motion for leave to amend and for an extension of time to effect service should be denied as moot.

For purposes of the motion to dismiss, I take as true the allegations in the amended complaint.

Defendants are Delaware corporations. (D.I. 7 ¶¶ 9, 10.) Defendant Everi Holdings Inc. was formerly known as Global Cash Access Holdings, Inc. and Defendant Everi Payments Inc. was formerly known as Global Cash Access, Inc. (*Id.* ¶ 11.) Both changes of name occurred on August 24, 2015. (*Id.*)

Plaintiffs and Defendants are both sellers of kiosks, similar to ATMs, that allow casino patrons to withdraw cash from their bank accounts, take a cash advance on their debit or credit cards, or purchase tickets or vouchers that can be redeemed for chips to use in the casino. (*Id.* ¶ 14.) These gaming-specific kiosks allow casino patrons to continue to withdraw money even after their daily ATM withdrawal limit for a particular account has been reached. (*Id.*) Gaming-specific kiosks are widely used in casinos throughout the United States. (*Id.* ¶ 16.)

Defendant Everi Payments Inc. is the current assignee of United States Patent No. 6,081,792. The '792 Patent generally describes and claims methods of providing money to an account holder at a terminal.

On May 1, 2015, Global Cash Access, Inc., which later became Defendant Everi Payments Inc., sued NRT in the United States District Court for the District of Nevada for infringement of the '792 Patent.[1] (D.I. 7 ¶ 29, Ex. C.) It also asserted claims of unfair competition, intentional interference with prospective economic advantage, and deceptive trade practices. (*Id.*)

Three days later, on May 4, 2015, Global Cash Access also filed a complaint with the ITC alleging that NRT's gaming-specific kiosks infringed the '792 patent. (*Id.* ¶ 29, Ex. D.)

Both of those matters are now resolved. In the district court action, NRT filed a motion to dismiss, arguing, in part, that the '792 Patent was invalid under 35 U.S.C. § 101. (*Id.* ¶ 34; D.I. 14, Ex. E.) The district court granted NRT's motion to dismiss the infringement claim under § 101 and the parties subsequently stipulated to dismissal of the remaining claims. (D.I. 7 ¶¶ 34, 44, Ex. H.)

---

[1] *See Glob. Cash Access, Inc. v. NRT Tech. Corp.*, No. 15-822 (D. Nev.).

2

NRT moved for attorney's fees. The district court denied NRT's motion on September 24, 2018, concluding the case "lack[ed] something beyond NRT's § 101 victory required to find a case exceptional."[2]

Meanwhile, in the ITC Action, Everi moved to disqualify NRT's counsel because the same law firm had previously represented Global Cash Access in an investigation brought by the Arizona Department of Gaming many years earlier. (D.I. 14, Ex. B.) During the course of that investigation, the Arizona Department of Gaming issued a letter that I'll refer to as the 2009 letter. (D.I. 7 ¶ 21, Ex. B.) In the ITC proceeding, NRT was contending that the 2009 letter evidenced that Global Cash Access had used the method claimed by the '792 Patent more than one year before filing the patent application. (D.I. 14, Ex. A.)

To resolve Everi's motion to disqualify NRT's counsel in the ITC proceeding, the parties stipulated that NRT would withdraw its invalidity and unenforceability defenses based on Global Cash Access's alleged prior public use. (D.I. 14, Ex. C.) Ultimately, the ALJ found that the independent claims of the '792 Patent were invalid under [35 U.S.C.] § 112 as indefinite, and that finding was affirmed. (D.I. 7, Ex. E, Ex. F.) On June 1, 2016, Everi withdrew its ITC complaint. (*Id.*, Ex. G.)

In the meantime, NRT tried unsuccessfully to institute a covered business method review before the PTAB. The PTAB found that NRT had not shown it was more likely than not that the '792 patent was unpatentable.

That brings us to this case. NRT filed this action on April 30, 2019. (D.I. 1.) The amended complaint contains two counts. (D.I. 7.) Count 1 is a so-called *Walker Process* antitrust claim. In that count, NRT alleges that Everi violated the Sherman Antitrust Act, 15 U.S.C. § 2, by asserting the '792 Patent when it was acquired through fraud. Count 2 is a so-called sham litigation antitrust claim. In that count, NRT alleges that Everi violated the Sherman Act by instituting sham litigation against NRT and others. Both counts are premised on NRT's contention that Everi knew that the '792 Patent was invalid due to Global Cash Access's prior public use of a kiosk that practiced the claimed method. (*Id.* ¶¶ 20-49.)

---

[2] *Glob. Cash Access, Inc. v. NRT Tech. Corp.*, No. 15-822, 2018 WL 4566678, at *2 (D. Nev. Sept. 24, 2018).

3

The amended complaint alleges that the relevant product market is gaming-specific kiosks, which does not include traditional ATMs. (*Id.* ¶ 15.) According to the amended complaint, the gaming and casino industry is highly regulated. (*Id.*) As a result, gaming-specific kiosks are often subject to state and local regulations. Gaming specific kiosks also integrate with casino accounting systems that use software that has been certified by gaming authorities. According the amended complaint, that makes them different and not reasonably interchangeable with traditional ATMs. (*Id.*) The amended complaint also alleges that casinos "demand" self-service kiosks because they reduce casinos' labor costs and the time it takes casino patrons to access cash and chips. (*Id.* ¶ 16.) The amended complaint alleges that the relevant geographic market is "the United States." (*Id.*)

The amended complaint alleges that, between May 1, 2015 and January 15, 2018, Everi possessed and maintained monopoly power in the gaming-specific kiosk market. (*Id.* ¶ 17.) It further alleges that, "at points" during that period, "Everi's market share for financial services related to the Relevant U.S. Market was estimated to be between 70 and 75%." (*Id.* ¶ 47.)

Everi filed the pending motion to dismiss on September 17, 2019. (D.I. 12.) On October 21, 2019, NRT filed its motion seeking leave to file a first amended complaint and to extend time to serve it. (D.I. 18.) Both parties requested oral argument. (D.I. 24; D.I. 25.) I heard argument earlier today and this is my report and recommendation.

I'm not going to read into the record the standard that applies to a motion to dismiss under Rule 12(b)(6). I have a standard that I use in my opinions, for example, recently in *Truinject Corp. v. Nestle Skin Health, S.A.*, which I hereby incorporate by reference.[3]

---

[3] No. 19-592, 2020 WL 70981, at *7 (D. Del. Jan 7, 2020). A defendant may move to dismiss a complaint under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible on its face when the complaint contains "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). A possibility of relief is not enough. *Id.* "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).
In determining the sufficiency of the complaint under the plausibility standard, all "well-pleaded facts" are assumed to be true, but legal conclusions are not. *Id.* at 679. "[W]hen the

Everi first argues that the Court should dismiss the complaint as time barred. Sherman Act claims have a four-year statute of limitations.[4] Everi argues that NRT's Sherman Act claims accrued no later than May 1, 2019, which is four years after it sued NRT for patent infringement in the District of Nevada. Everi points out that NRT filed this case on April 30, 2019, but it never served Everi with the original complaint. Instead, NRT filed an amended complaint on July 15, 2019 and served that complaint on July 16, 2019. (D.I. 7; D.I. 8; D.I. 9.) Everi argues that, because NRT never served the original complaint within 90 days in accordance with Federal Rule of Civil Procedure 4(m), NRT's service of the amended complaint was improper.

Everi asks the court to dismiss the amended complaint pursuant to Rule 12(b)(5) for insufficient service of process. Everi also asks the court to hold that NRT's antitrust claims are now time barred because the statute of limitations expired on May 1, 2019.

NRT responds that it complied with Rule 4(m) because it served the amended complaint—which contained the same counts as the original complaint—within 90 days of commencing the action. NRT argues, in the alternative, that the Court should grant *nunc pro tunc* its motion for leave to file its first amended complaint and an extension of time for service of the original complaint. (D.I. 18.)

I disagree with Everi that NRT's service of the amended complaint was improper. The *Barrett*, *Leonard*, and *Brittany O* cases cited by Everi are not analogous to the situation here.[5] In those cases, the deadline for serving the original complaint had passed before the plaintiff served the amended complaint.[6] Those cases

---

allegations in a complaint, however true, could not raise a claim of entitlement to relief, this basic deficiency should be exposed at the point of minimum expenditure of time and money by the parties and the court." *Twombly*, 550 U.S. at 558 (internal marks omitted).

[4] 15 U.S.C. § 15b.

[5] *Brittany O v. Bentonville Sch. Dist.*, No. 14-135, 2015 WL 284971 (E.D. Ark. Jan. 22, 2015); *Barrett v. City of Allentown*, 152 F.R.D. 46 (E.D. Pa. 1993); *Leonard v. Stuart-James Co.*, 742 F. Supp. 653 (N.D. Ga. 1990).

[6] *See Barrett*, 152 F.R.D. at 48-49 (dismissing action where the amended complaint was not served within the time period for serving the original complaint, and the court previously warned the plaintiffs that failure to serve the amended complaint within that time period would

5

merely stand for the proposition that the filing of an amended complaint cannot cure a failure to serve the operative complaint within the time period set forth in Rule 4.

The *Tekula* case cited by NRT, on the other hand, is analogous.[7] In that case, the court held that "[w]hile it is true that the filing of an amended complaint does not extend the 120 day period, so long as the amended complaint is filed and served within 120 days of filing the original complaint and does not add any causes of action barred by the statute of limitations, it does not matter that it is the amended summons and complaint that is served on a defendant named in the original complaint."[8]

There, the court held that the plaintiff's filing and service of an amended complaint within 120 days of commencing the action was sufficient to satisfy Rule 4(m), notwithstanding the fact that the plaintiff never served defendants with the original complaint.

Of course, Rule 4(m) has been amended and it currently requires service within 90 days. But the situation here is otherwise the same as in *Tekula*. NRT's amended complaint contains the same causes of action as its original complaint. NRT served Everi with its amended complaint within 90 days of filing its original complaint. That was sufficient to comply with Rule 4(m), and the fact that NRT never served the original complaint is irrelevant.

Accordingly, I recommend that Defendants' motion to dismiss under Rule 12(b)(5) be denied.

And because I conclude that Defendants were adequately served, I recommend that NRT's motion for leave to amend and for an enlargement of time to serve the complaint be denied as moot.

Everi next argues that NRT's claims are procedurally barred because NRT failed to assert them as compulsory counterclaims in the Nevada action.

---

result in dismissal); *Leonard*, 742 F. Supp. at 660, 662 (service did not comply with Rule 4 where the amended complaint was served after expiration of the time for serving the original complaint); *see also Brittany O*, 2015 WL 284971, at *2.

[7] *Tekula v. Bayport-Blue Point Sch. Dist.*, 295 F. Supp. 2d 224 (E.D.N.Y. 2003).

[8] *Id.* at 229 (quoting *Wilson v. Diocese of the New York Episcopal Church*, No. 96-2400, 1998 WL 82921, at *8 (S.D.N.Y.1998)).

Federal Rule of Civil Procedure 13(a) requires that "a pleading" must state as a counterclaim any claim the pleader has against the opposing party at the time of serving the pleading if the claim arises out of the transaction or occurrence that is the subject matter of the opposing party's claim.[9] "The failure to plead a compulsory counterclaim bars a later independent action on that claim."[10]

Everi argues that the Court should apply Third Circuit law to the question of whether NRT's antitrust claims were compulsory counterclaims in Nevada, which is in the Ninth Circuit. And Everi cites cases from courts in the Third Circuit that, Everi contends, stand for the proposition that antitrust claims alleging sham patent infringement are compulsory counterclaims in the patent infringement case. Everi also cites cases from courts in the Third Circuit holding that *Walker Process* antitrust claims are compulsory counterclaims in the underlying infringement suit.

NRT responds that, under the law of the Ninth Circuit, it was not required to assert its antitrust counterclaims in the Nevada suit. NRT also argues that Rule 13(a) does not apply because Everi's patent claim was dismissed prior to NRT filing a responsive pleading.

I agree with NRT on the latter point. As the cases cited by NRT make clear, Rule 13(a) applies to "pleadings," which are defined in Rule 7 as complaints and answers and the like. Rule 13(a) requires a party to state certain counterclaims in its pleading. As the *Mellon Bank* and *Tyler* cases hold, a motion to dismiss is not a pleading.[11] NRT could not have asserted its antitrust counterclaims in its motion to dismiss Everi's patent infringement claim.

Everi points out that, unlike the cases cited by NRT, NRT ultimately did file a pleading in the Nevada case. Although the Nevada judge dismissed Everi's patent infringement claim, NRT subsequently filed an answer in response to Everi's claims of unfair

---

[9] Fed. R. Civ. P. 13(a).

[10] *M.R. v. Ridley Sch. Dist.*, 744 F.3d 112, 121 (3d Cir. 2014).

[11] *See Mellon Bank, N.A. v. Ternisky*, 999 F.2d 791, 795 (4th Cir. 1993) ("Rule 13(a) does not come into play when a defendant files only a motion to dismiss, instead of a pleading." (citing cases)); *Tyler v. DH Capital Mgmt., Inc.*, 736 F.3d 455, 459 (6th Cir. 2013) ("Where a claim has been dismissed, Rule 13 imposes no obligation to respond or oppose the dismissal.").

7

competition, interference with prospective economic advantage, and deceptive trade practices.

Insofar as Everi contends that Rule 13 required NRT to assert in its answer a counterclaim that was compulsory to a claim that had already been dismissed, I disagree. Rule 13 requires a defendant to assert certain counterclaims that arise out of the same transaction or occurrence as the plaintiff's claim. Everi's patent infringement claim was dismissed before NRT filed a responsive pleading, and so it was not a "claim" in the case anymore. None of the cases cited by Everi stand for the proposition that a defendant must assert counterclaims that are compulsory only to claims that were dismissed before the defendant filed a responsive pleading.

In its reply brief, Everi argues that NRT's antitrust claims were compulsory counterclaims as to Everi's remaining claims in the Nevada case. I disagree.

The remaining claims in the Nevada suit were related to Everi's contention that NRT made false representations to Everi's current and potential customers that certain new technology made the '792 Patent invalid and/or obsolete. The Nevada court declined to dismiss those claims, notwithstanding its holding that the '792 patent was invalid, because it held that Everi might still have an unfair competition-type claim regardless of the '792 Patent's validity. (D.I. 7, Ex. H at 16-17.) I would be strained to find that those claims—which are based on NRT's alleged misrepresentations to Everi's customers—arise out of the same transaction or occurrence as NRT's claims in this case, both of which are premised on its contention that Everi fraudulently obtained and tried to enforce a patent that it knew was invalid and unenforceable because the claimed method was in prior public use.

Nor do the two sets of claims have "logical relationship" to each other, as Everi suggests. The *Great Lakes* case cited by Everi states that "a counterclaim is logically related to the opposing party's claim where separate trials on each of their respective claims would involve a substantial duplication of effort and time by the parties and the courts."[12] Everi doesn't explain how that is the case

---

[12] *Great Lakes Rubber Corp. v. Herbert Cooper Co.*, 286 F.2d 631, 634 (3d Cir. 1961).

here, and it seems unlikely that it would be. The claims have different legal elements and different factual predicates.[13]

Finally, while I do not need to reach the issue because I conclude that NRT's claims were not compulsory counterclaims under a general application of Rule 13(a), I agree with NRT that Ninth Circuit law applies to the question of whether NRT's antitrust claims were compulsory counterclaims in the Nevada action. The cases cited by Everi do not support its contention that Third Circuit law should apply under these circumstances.[14] In contrast, the *Destiny Tools* case cited by NRT supports its argument that the law of the circuit of the original action should govern the question of whether a claim was compulsory in the original action.[15] That case also supports NRT's argument that, in the Ninth Circuit, antitrust claims are not compulsory counterclaims in a patent infringement case.[16]

In sum, I reject Everi's argument that NRT's antitrust claims are barred by Rule 13(a).

Everi next argues that NRT fails to sufficiently plead a sham litigation or *Walker Process* claim. As Everi rightly points out, under the *Noerr-Pennington* doctrine, "[a] party who petitions the government for redress generally is immune from antitrust liability."[17] Accordingly, a patent owner is generally immune from antitrust liability for merely bringing an infringement lawsuit.

---

[13] *See M.R.*, 744 F.3d at 121 (second case was not barred by Rule 13(a) where "despite a relationship between the two lawsuits, there [was] no meaningful overlap between the facts and law underlying the different claims at issue").

[14] *See Ragner Tech. Corp. v. Berardi*, No. 15-7752, 2018 WL 6804486, at *4 (D.N.J. Dec. 27, 2018) (first action was transferred to a district court in the Third Circuit before the defendant filed a responsive pleading); *Am. Packaging Corp. v. Golden Valley Microwave Foods, Inc.*, (citing cases from district courts in both circuits in support of its holding that a claim was compulsory in a prior action in another circuit).

[15] *See Destiny Tool v. SGS Tools Co.*, 344 F. App'x 320, 322-23 (9th Cir. 2009) ("The original patent infringement litigation occurred in the Sixth Circuit, and thus Sixth Circuit law more logically applies.").

[16] *Id.* at 323.

[17] *Cheminor Drugs, Ltd. v. Ethyl Corp.*, 168 F.3d 119, 122 (3d Cir. 1999) (citing *Eastern R.R. Presidents Conference v. Noerr Motor Freight,* 365 U.S. 127 (1961); *United Mine Workers of Am. v. Pennington,* 381 U.S. 657 (1965)).

>However, there are two exceptions to *Noerr-Pennington* immunity: (1) where the patent infringement suit was merely a "sham"; and (2) where the patent owner obtained the patent through fraud, also known as a *Walker Process* fraud.[18]
>
>Everi alleges that the amended complaint fails to adequately allege *Walker Process* fraud. A *Walker Process* fraud claim requires, among other things, (1) a false representation or deliberate omission of a fact material to patentability (2) made with the intent to deceive the patent examiner, (3) on which the examiner justifiably relied in granting the patent, and (4) but for which misrepresentation or deliberate omission the patent would not have been granted.[19] Claims of *Walker Process* fraud must satisfy the particularity requirement of Rule 9(b).[20] That rule requires pleading the who, what, when, where, and how of the events at issue.
>
>NRT's [amended] complaint satisfies that standard. It alleges: (1) that, as early as 1996, Global Cash Access (the predecessor of Everi Payments Inc.) was providing cash withdrawal terminals at gaming facilities and casinos (D.I. 7 ¶ 21); (2) that a 2009 letter from the Arizona Department of Gaming evidences that GCA's prior art terminals used the methods of claims 1 and 9 of the '792 Patent (*id.* ¶ 22); (3) that the named inventors of the '792 Patent, Robert Cucinotta and Karim Maskatiya were aware of the terminals and that they performed the claimed method, and that their awareness is evidenced in the 2009 letter (*id.* ¶ 23); (4) that one of the inventors founded the company, the other was involved in running it, and both of them controlled the company during the relevant period (*id.*); (5) that the inventors failed to disclose Global Cash Access's prior public use to the PTO (*id.* ¶ 24); and (6) the examiner would not have granted the patent if it had known of the prior public use (*id.* ¶¶ 26, 32).

---

[18] *S3 Graphics Co. v. ATI Techs. ULC*, No. 11-1298, 2014 WL 573358, at *3 (D. Del. Feb. 11, 2014).

[19] *Hydril Co LP v. Grant Prideco LP*, 474 F.3d 1344, 1349-50 (Fed. Cir. 2007); *C.R. Bard, Inc. v. M3 Sys., Inc.*, 157 F.3d 1340, 1364 (Fed. Cir. 1998).

[20] *Int'l Bus. Machines Corp. v. Priceline Grp. Inc.*, No. 15-137, 2017 WL 1349175, at *4–5 (D. Del. Apr. 10, 2017).

I disagree with Everi that the [amended] complaint fails to adequately allege "who." Unlike the cases cited by Everi,[21] NRT has specifically identified the named inventors and alleged facts plausibly supporting NRT's allegations that the named inventors knew about GCA's prior public use and that they acted with intent to deceive. (D.I. 7 ¶¶ 23-27.)

Everi also alleges that the amended complaint fails to adequately allege the sham litigation exception to *Noerr-Pennington* immunity. The standard for determining whether the litigation is a sham depends on whether the antitrust defendant is alleged to have brought a series of sham cases or a single case.[22] The parties dispute which standard should apply here.

Everi argues that the Court should apply the test set forth in *Professional Real Estate Investors*, which requires, among other things, a showing that the antitrust defendant brought a litigation that was objectively baseless and brought it with a subjective intent to interfere directly with its competitors' business relationships through use of the government process.[23]

NRT argues that the Court should apply the Third Circuit's test [based on] *California Motor*, which "asks whether a series of petitions were filed with or without regard to merit" and "for the purpose of using the governmental process (as opposed to the outcome of that process) to harm a market rival and restrain trade."[24]

---

[21] *See Senju Pharm. Co., Ltd. v. Apotex, Inc.*, 921 F. Supp. 2d 297, 307 (D. Del. 2013) (finding allegations insufficient where they failed to identify any specific individual that deceived the PTO); *XpertUniverse, Inc. v. Cisco Sys., Inc.*, 868 F. Supp. 2d 376, 381 (D. Del. 2012) (complaint failed to adequately identify the "who" where it alleged that a named individual *or* one or more of the other inventors knew of invalidating information); *see also Dippin' Dots, Inc. v. Mosey*, 476 F.3d 1337, 1347 (Fed. Cir. 2007) (concluding there was insufficient evidence of intent following a full trial).

[22] *See Fed. Trade Comm'n v. Shire ViroPharma Inc.*, No. 17-131-RGA, 2018 WL 1401329, at *7 (D. Del. Mar. 20, 2018), *aff'd,* 917 F.3d 147 (3d Cir. 2019).

[23] *Professional Real Estate Investors, Inc. v. Columbia Pictures Indus., Inc.*, 508 U.S. 49 (1993) ("*PRE*").

[24] *Hanover 3201 Realty, LLC v. Vill. Supermarkets, Inc.*, 806 F.3d 162, 180–81 (3d Cir. 2015) (citing *Cal. Motor Transp. Co. v. Trucking Unlimited*, 404 U.S. 508 (1972)).

I do not need to resolve the parties' dispute now because I conclude that NRT's [amended] complaint sufficiently alleges sham litigation under the *PRE* standard proffered by Everi.

As an initial matter, as district courts in this Circuit have recognized, the question of whether litigation is objectively baseless generally involves factual issues that are inappropriate for evaluation at the motion to dismiss stage.[25]

Here, the [amended] complaint alleges facts making it plausible that NRT asserted the '792 Patent in the Nevada and ITC cases knowing that each of those cases was objectively baseless because the patent was unenforceable. (*Id.* ¶ 28.)

Everi makes four arguments in support of its contention that the [amended] complaint fails to plausibly allege sham litigation.

First, Everi points out that the District of Nevada Judge declined to award attorney's fees to NRT as a result of her finding, in that case, that Everi's arguments weren't objectively baseless. Everi's argument sounds like an issue preclusion argument, but counsel agreed during the hearing today that issue preclusion doesn't apply and Everi makes no attempt to show how the elements of issue preclusion are met. And they aren't.

Judge Du did not decide the issue of whether Everi's assertion of the '792 Patent was objectively baseless because it knew that the patent was invalid and unenforceable due to prior public use. Judge Du dismissed Everi's patent infringement claim based on her holding that the '792 Patent was invalid under § 101. Having reviewed that opinion, it is clear that her decision not to award fees was based on her conclusion in that case that Everi's arguments in support of validity under § 101 were not objectively baseless.[26] She was not confronted with, nor did she decide the issue of objective baselessness in connection with Global Cash Access's prior public use. Nor did she discuss the baselessness of the other three claims.

---

[25] *See, e.g., Takeda Pharm. Co. Ltd. v. Zydus Pharm. (USA) Inc.*, 358 F. Supp. 3d 389, 394–95 (D.N.J. 2018) (collecting cases); *Shire ViroPharma*, 2018 WL 1401329, at *7 ("[W]hether [the patent holder's] activity was in fact a sham under either standard is a factual inquiry, which cannot be resolved at the motion to dismiss stage."); *Shionogi Pharma, Inc. v. Mylan, Inc.*, No. 10-1077, 2011 WL 3860680, at *6 (D. Del. Aug. 31, 2011) ("Whether the underlying litigation is baseless is a factual issue not to be determined on a motion to dismiss."); *In re Gabapentin Patent Litig.*, 649 F. Supp. 2d 340, 363–64 (D.N.J. 2009).

[26] *Glob. Cash Access, Inc. v. NRT Tech. Corp.*, 2018 WL 4566678, at *2-4.

And nothing in her opinion suggests the implausibility of the sham litigation claim asserted here.

Second, Everi points out that the PTAB twice declined to initiate covered business method review of the '792 patent in response to NRT's requests. This also sounds like an issue preclusion argument. Among other potential problems with applying issue preclusion to this situation, Everi conceded in the hearing today that the PTAB never considered the prior public use alleged in the complaint here.

Third, Everi argues that NRT should not be allowed to raise its sham litigation claims here because it stipulated in the ITC case and the Nevada case that it would withdraw its defenses based on Global Cash Access's alleged prior public use. This sounds like some kind of estoppel argument. Suffice it to say that I have reviewed that stipulation, and it expressly applies to NRT's defenses in the Nevada and ITC actions. (D.I. 14, Ex. C.) It says nothing about an antitrust case.

Perhaps a fairer interpretation of Everi's first three arguments is that if NRT's prior public use argument was so great, NRT probably would have raised it before now. It probably would not have agreed to forego that defense in front of the ITC and the Nevada court, and it probably would have brought it up to the PTAB. Everi may well be right about that, but on a motion to dismiss the court looks for plausibility, not probability.[27]

Everi's fourth argument is that NRT failed to plead that the Nevada action was a sham as a whole because it asserted three other claims in addition to its patent infringement claim. (D.I. 13 at 12.) However, the Third Circuit case cited by Everi does not stand for the proposition that a single claim from a lawsuit can never be the basis for an antitrust claim based on sham litigation.[28]

Contrary to Everi's argument, the Nevada judge did not rule that those claims were not objectively baseless; she only ruled that they stated claims. That doesn't mean they couldn't be baseless.

---

[27] *Iqbal*, 556 U.S. at 678.

[28] *See Avaya Inc., RP v. Telecom Labs, Inc.*, 838 F.3d 354, 414 (3d Cir. 2016) (stating that "one might imagine a situation where a single claim, separated from an otherwise arguably meritorious suit, is so harmful and costly to a defendant that it might impose anticompetitive harm on the defendant in a way that triggers the sham litigation exception," but concluding that the case before it was not such a situation).

13

>The Nevada judge never had the occasion to rule on the baselessness or the merit of Everi's other claims because it ultimately stipulated to their dismissal. Moreover, the [amended] complaint here does allege that Everi's other claims in the Nevada suit were baseless. (D.I. 7 ¶¶ 43-45.)
>
>Finally, contrary to Everi's argument, the [amended] complaint does allege that Everi acted with an improper subjective motivation. (*Id.* ¶¶ 28, 35, 36.[29])
>
>In sum, I conclude that the [amended] complaint adequately alleges the *Walker Process* and sham litigation exceptions to *Noerr-Pennington* immunity.
>
>In addition to alleging an exception to immunity, an antitrust plaintiff must still allege a substantive antitrust violation. Everi first argues that NRT fails to adequately plead a relevant product market. I explained the legal requirement to plead a relevant market in my report and recommendation in *3Shape Trios A/S v. Align Tech., Inc.*, and I incorporate by reference my explanation of that legal standard.[30] As I explained in that case, courts should reject motions

---

[29] *See* D.I. 7 ¶ 28 (alleging that Defendants asserted the '792 Patent knowing it was invalid with the intent to acquire or otherwise maintain monopoly market power); *id.* ¶ 35 ("Everi simply elected to use the district court and the ITC as a tool for extortion-like tactics to further its own commercial motives and to otherwise maintain or further establish significant and durable monopoly market power in the Relevant U.S. Market or to otherwise directly interfere with the business relationships of participants in the Relevant US Market, including and especially NRT."); *id.* ¶ 36 (referring to "Everi's efforts to enforce a clearly invalid and unenforceable patent against NRT for the intended purpose of driving NRT out of the Relevant U.S. Market").

[30] No. 18-1332, 2020 WL 2559777, at *9 (D. Del. May 20, 2020). To succeed on a claim under Section 2 of the Sherman Act, a plaintiff must demonstrate the defendant's possession of monopoly power in a relevant market (for a monopolization claim) or a dangerous probability of achieving monopoly power in a relevant market (for an attempted monopolization claim). *United States v. Dentsply Int'l,* 399 F.3d 186-87 (3d Cir. 2005); *Phila. Taxi Ass'n, Inc. v. Uber Techs., Inc.*, 886 F.3d 332, 339 (3d Cir. 2018).
The Supreme Court has defined monopoly power as "the power to control prices or exclude competition." *United States v. Grinnell Corp.*, 384 U.S. 563, 571 (1966) (quoting *United States v. E. I. du Pont De Nemours & Co.*, 351 U.S. 377, 391 (1956)). The existence of monopoly power in a relevant market may be proven "through direct evidence of supracompetitive prices and restricted output." *Broadcom Corp. v. Qualcomm Inc.*, 501 F.3d 297, 307 (3d Cir. 2007). Alternatively, monopoly power may be inferred from indirect evidence, where the plaintiff shows that a defendant "has a dominant share in a relevant market, and that significant 'entry barriers' protect that market." *Id.*, 501 F.3d at 307 (citing *Harrison Aire, Inc. v. Aerostar Int'l, Inc.*, 423 F.3d 374, 380–81 (3d Cir. 2005)).

to dismiss on market definition grounds unless the plaintiff's proposed definition is inherently implausible.

NRT's proposed gaming-specific kiosk market is not inherently implausible. As explained earlier, NRT's [amended] complaint alleges that gaming-specific kiosks differ from traditional ATMs and are not reasonably interchangeable with ATMs. (D.I. 7 ¶¶ 14-15.) Moreover, NRT's [amended] complaint alleges that casinos "demand" self-service kiosks because they cut down on labor costs and reduce the time it takes patrons to access funds. (*Id.* ¶ 16.) Those allegations describing the differences between the market as alleged and potential substitutes are sufficient to survive a motion to dismiss, particularly since defining the relevant market is a "fact-intensive inquiry."[31]

Everi also challenges NRT's definition of the geographic market. There was some discussion in the briefing as to whether the geographic market was defined with reference to where the sellers are located or whether it is defined with reference to where the buyers are located.

The amended complaint alleges that the geographic market is "the United States." (D.I. 7 ¶ 16.) Everi's opening brief took that to mean sellers located in the United States, and it argued that NRT had not plausibly alleged why foreign suppliers should not be

---

Section 2 plaintiffs who take the indirect route bear the burden of defining a "relevant market." *Queen City Pizza, Inc. v. Domino's Pizza, Inc.*, 124 F.3d 430, 436 (3d Cir. 1997). "Competing products are in the same market if they are readily substitutable for one another; a market's outer boundaries are determined by the reasonable interchangeability of use between a product and its substitute, or by their cross-elasticity of demand." *Broadcom*, 501 F.3d at 308.

The plaintiff must adequately allege a proposed relevant market in its complaint. *Id.*; *see also Queen City Pizza*, 124 F.3d at 436. A complaint may be dismissed for failure to plead a relevant market where the plaintiff "fails to define its proposed relevant market with reference to the rule of reasonable interchangeability and cross-elasticity of demand." *Queen City Pizza*, 124 F.3d at 436. A complaint is also legally insufficient and subject to dismissal where the "proposed relevant market . . . clearly does not encompass all interchangeable substitute products even when all factual inferences are granted in plaintiff's favor." *Id.* However, in general, the determination of a relevant market is a "complex and fact-intensive inquiry." *Philadelphia Taxi Ass'n*, 886 F.3d at 341–42. Accordingly, courts should deny motions to dismiss unless "the alleged market makes 'no economic sense under any set of facts.'" *PepsiCo, Inc. v. Coca–Cola Co.*, No. 98-3282, 1998 WL 547088, at *6 (S.D.N.Y. Aug. 27, 1998). "Absent an inherently implausible market allegation, the question must be resolved on the facts and economic realities of the case." *Id.*

[31] *Philadelphia Taxi Ass'n*, 886 F.3d at 341–42.

included. NRT's answering brief clarified that its proposed geographic market is defined with reference to the buyers' location and it covers sales in the United States regardless of where the seller is located. After reviewing the [amended] complaint in its entirety, I agree that it is susceptible to that reading since NRT itself is a Canadian supplier.

As Everi agreed during the hearing today, there is nothing *per se* wrong with defining a market in terms of sales in the United States.[32] Moreover, the amended complaint here suggests a plausible reason why the market should not include the total output of foreign firms. In particular, the amended complaint explains that gaming-specific kiosks sold in the United States are designed to comply with state regulations.[33] (D.I. 7 ¶¶ 15-16.) That is enough to proceed at this stage of the litigation.

Of course, Everi will be free to show later in the litigation that, as a matter of fact, worldwide sales constrain the price of products sold in the United states, as was the case in the *Eastman Kodak* and *Occidental Petroleum Corp.* cases cited in Everi's brief.[34] At this stage, however, NRT has alleged enough.

Although a very close call, I also agree with NRT that the amended complaint sufficiently alleges market power during the relevant period. In particular, it alleges that Everi's market share "at points" during the relevant period was estimated to be 70% to 75%, and that its market share decreased following the invalidation of the

---

[32] *See* Phillip E. Areeda & Herbert Hovenkamp, *Antitrust Law: An Analysis of Antitrust Principles & Their Application*, ¶ 555 (4th ed. 2020) ("When only actual imports are to be counted, courts say that the market is nationwide and includes all *sales* there."); *see also Transweb LLC v. 3M*, 812 F.3d 1295, 1308 (Fed. Cir. 2016) (affirming jury's finding of *Walker Process* violation where the relevant market was defined with respect to sales in the United States and included foreign manufacturers).

[33] *See TransWeb,* 812 F.3d at 1308 (affirming geographic market definition of sales in the United States where products in relevant market were governed by OSHA regulations); *cf.* U.S. Dep't of Justice, Horizontal Merger Guidelines, § 4.2 (2010), available at https://www.justice.gov/sites/default/files/atr/legacy/2010/08/19/hmg-2010.pdf.

[34] *United States v. Eastman Kodak Co.*, 63 F.3d 95, 104-109 (2d Cir. 1995); *FTC v. Occidental Petroleum Corp.*, 1986 WL 952, at *15 (D.D.C. Apr. 29, 1986).

'792 Patent. (D.I. 7 ¶ 47.) That is enough at this stage of the litigation.[35]

Everi takes issue with Paragraph 47's use of the phrase "at points." NRT confirmed during the hearing today that the "at points" phrase relates to when Everi's market power was estimated, not to when Everi had market power, and I agree the [amended] complaint is reasonably read that way.

Everi also takes issue with Paragraph 47's use of the phrase "related to the relevant U.S. market." NRT argued during the hearing today that the phrase "related to the relevant U.S. market" means "in the relevant U.S. market." That's a closer case. I agree with Everi that this paragraph is not a model of clarity. However, read in light of the remainder of the [amended] complaint, which repeatedly alleges that Everi had market power in the Relevant U.S. market, for example, at Paragraph 17, I think NRT has alleged enough. To be clear, the situation here is not one where NRT argues it doesn't have to allege market power in the same market alleged in the complaint. NRT agrees that it has to do that. The situation here is that it says it has.

Everi argues that the [amended] complaint fails to allege an antitrust injury. "An antitrust injury is an injury of the type the antitrust laws were intended to prevent and that flows from that which makes [the] defendants' acts unlawful."[36] "[T]he existence of antitrust injury is not typically resolved through motions to dismiss."[37]

The *Transweb* case cited by NRT held that attorney's fees incurred by a competitor in defending an infringement suit can be an antitrust injury.[38]

---

[35] *Dentsply,* 399 F.3d at 188-90 (holding that a 75–80% "share of the market is more than adequate to establish a prima facie case of power"); *Image Tech. Servs., Inc. v. Eastman Kodak Co.*, 125 F.3d 1195, 1206 (9th Cir. 1997) ("Courts generally require a 65% market share to establish a prima facie case of market power.").

[36] *See W. Penn Allegheny Health Sys. V. UPMC*, 627 F.3d 85, 101 (3d Cir. 2010).

[37] *Rochester Drug Co-op., Inc. v. Braintree Labs.*, 712 F. Supp. 2d 308, 318 (D. Del. 2010) (quoting *Schuylkill Energy Res. v. Pa. Power & Light Co.*, 113 F.3d 405, 417 (3d Cir.1997)).

[38] *TransWeb,* 812 F.3d at 1308-12. NRT sufficiently alleges that it incurred such fees. (D.I. 7 ¶¶ 48-49, 56, 60.)

17

Everi argues that NRT was required to plead that competition as a whole was injured as a result of Everi's infringement suit. However, the Federal Circuit's *Transweb* case held that attorney's fees incurred in defending an infringement suit could be recovered as damages in a subsequent antitrust suit notwithstanding the patentee's argument that the harm to competition never materialized because the infringement defendant defended the suit and ultimately won.[39] The court reasoned that the antitrust laws are designed to protect competition, so it would make no sense to require an antitrust plaintiff to wait until it was excluded from the market to bring its antitrust suit when it could defend against the anticompetitive suit and later seek damages for the cost of its defense.[40] And proceeding under that option prevents the injury from being shared by all participants in the relevant market.[41]

In other words, there is no requirement that a sham litigation or *Walker Process* antitrust plaintiff prove that the market as a whole actually suffered injury as a result of the infringement case. Which means there is no requirement to plead it.

Everi sought an injunction against NRT in both the district court and the ITC [infringement] cases. If Everi had won either of those cases, it's plausible that the market as a whole would have suffered injury. NRT instead chose to defend those cases and it incurred expense in doing so. There is no requirement that NRT plead that there was an additional injury to the market as a whole. Everi suggests that the Third Circuit might disagree with *Transweb*, but that case was an appeal from a district court in the Third Circuit and I find its reasoning persuasive.[42]

In conclusion, I note that the parties cited to several cases that I have not expressly discussed. I have reviewed the cited cases to the extent that they were cited in support of a particular argument and I have determined that they do not warrant further discussion.

---

[39] *TransWeb*, 812 F.3d at 1308-12.

[40] *Id.* at 1310-11.

[41] *Id.* at 1312.

[42] Regardless, the amended complaint does plausibly allege that the market as a whole was injured during the relevant period. NRT alleges that other potential competitors were deterred from entering the market for fear of being sued, and that Everi's market share decreased after the '792 patent was held invalid. (D.I. 7 ¶¶ 32, 48, 49.)

18

For the reasons stated, I recommend that Everi's motion to dismiss be denied, and that NRT's motion for leave to amend and for an extension of time to effect service should be denied as moot.

This Report and Recommendation is filed pursuant to 28 U.S.C. § 636(b)(1)(B),(C), Federal Rule of Civil Procedure 72(b)(1), and District of Delaware Local Rule 72.1. Any objections to the Report and Recommendation shall be filed within fourteen days and limited to ten pages. Any response shall be filed within fourteen days thereafter and limited to ten pages. The failure of a party to object to legal conclusions may result in the loss of the right to *de novo* review in the district court.

The parties are directed to the Court's "Standing Order for Objections Filed Under Fed. R. Civ. P. 72," dated October 9, 2013, a copy of which can be found on the Court's website.

Dated: June 19, 2020

_____
The Honorable Jennifer L. Hall
United States Magistrate Judge