IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| NRT TECHNOLOGY CORP. and NRT TECHNOLOGIES, INC., | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | C.A. No. 19-804 (MN) (JLH) |
| EVERI HOLDINGS INC. f/k/a Global Cash Access Holdings, Inc. and EVERI PAYMENTS INC. f/k/a Global Cash Access, Inc., | ) ) ) ) ) | |
| Defendants. | ) ) | |

## <u>MEMORANDUM OPINION</u>

Christina B. Vavala, POLSINELLI PC, Wilmington, DE; Colby B. Springer, Barrington Dyer, Miya Yusa, POLSINELLI LLP, San Francisco, CA – Attorneys for Plaintiffs

Adam W. Poff, Pilar G. Kraman, YOUNG CONAWAY STARGATT & TAYLOR, LLP, Wilmington, DE; Ashley E. Bass, R. Jason Fowler, John S. Playforth, Carol Szurkowski, Jeffrey Cao, COVINGTON & BURLING LLP, Washington, DC – Attorneys for Defendants

September 25, 2020
Wilmington, Delaware

**NOREIKA, U.S. DISTRICT JUDGE**

Presently before the Court are the objections of Defendants Everi Holdings Inc. and Everi Payments Inc (collectively "Defendants" or "Everi") (D.I. 35) to Magistrate Judge Hall's Report and Recommendation (D.I. 34, "the Report").  The Report recommends denying Defendants' motion (D.I. 13) to dismiss the first amended complaint ("Amended Complaint") (D.I. 7) filed by Plaintiffs NRT Technology Corp. and NRT Technologies, Inc. (collectively "Plaintiffs" or "NRT").[1]  The Court has reviewed the Report (D.I. 34), Defendants' objections (D.I. 35) and Plaintiffs' responses thereto (D.I. 36), and the Court has considered *de novo* the objected-to portions of the Report and the relevant portions of Defendants' motion to dismiss and Plaintiffs' response to the motion (*see* D.I 13, 14, 19, 20, 23).  For the reasons set forth below, Defendants' objections are OVERRULED, the Report is ADOPTED, and Defendant's motion to dismiss is DENIED.

## I.     BACKGROUND

The Report set forth the relevant facts clearly.  As no party has objected to Report's recitation of facts, the Court adopts that recitation here:

> Defendants are Delaware corporations.  (D.I. 7 ¶¶ 9, 10).  Defendant Everi Holdings Inc. was formerly known as Global Cash Access Holdings, Inc. and Defendant Everi Payments Inc. was formerly known as Global Cash Access, Inc.  (*Id.* ¶ 11).  Both changes of name occurred on August 24, 2015.  (*Id.*).
>
> Plaintiffs and Defendants are both sellers of kiosks, similar to ATMs, that allow casino patrons to withdraw cash from their bank accounts, take a cash advance on their debit or credit cards, or purchase tickets or vouchers that can be redeemed for chips to use in the casino.  (*Id.* ¶ 14).  These gaming-specific kiosks allow casino patrons to continue to withdraw money even after their daily ATM withdrawal limit for a particular account has been reached.  (*Id.*).

---

[1]     The Report also recommended denying Plaintiffs' motion for leave to file a first amended complaint and for an extension of time to effect service (D.I. 18) as moot.  As Plaintiffs do not object to that recommendation, Plaintiffs' motion will be denied.

Gaming-specific kiosks are widely used in casinos throughout the United States. (*Id.* ¶ 16).

Defendant Everi Payments Inc. is the current assignee of United States Patent No. 6,081,792. The '792 Patent generally describes and claims methods of providing money to an account holder at a terminal.

On May 1, 2015, Global Cash Access, Inc., which later became Defendant Everi Payments Inc., sued NRT in the United States District Court for the District of Nevada for infringement of the '792 Patent.[2] (D.I. 7 ¶ 29, Ex. C). It also asserted claims of unfair competition, intentional interference with prospective economic advantage, and deceptive trade practices. (*Id.*).

Three days later, on May 4, 2015, Global Cash Access also filed a complaint with the ITC alleging that NRT's gaming-specific kiosks infringed the '792 patent. (*Id.* ¶ 29, Ex. D).

Both of those matters are now resolved. In the district court action, NRT filed a motion to dismiss, arguing, in part, that the '792 Patent was invalid under 35 U.S.C. § 101. (*Id.* ¶ 34; D.I. 14, Ex. E). The district court granted NRT's motion to dismiss the infringement claim under § 101 and the parties subsequently stipulated to dismissal of the remaining claims. (D.I. 7 ¶¶ 34, 44, Ex. H).

NRT moved for attorney's fees. The district court denied NRT's motion on September 24, 2018, concluding the case "lack[ed] something beyond NRT's § 101 victory required to find a case exceptional."[3]

Meanwhile, in the ITC Action, Everi moved to disqualify NRT's counsel because the same law firm had previously represented Global Cash Access in an investigation brought by the Arizona Department of Gaming many years earlier. (D.I. 14, Ex. B). During the course of that investigation, the Arizona Department of Gaming issued a letter[, referred to] as the 2009 letter. (D.I. 7 ¶ 21, Ex. B). In the ITC proceeding, NRT was contending that the 2009 letter evidenced that Global Cash Access had used the method claimed by the '792 Patent more than one year before filing the patent application. (D.I. 14, Ex. A).

---

[2]   *See Glob. Cash Access, Inc. v. NRT Tech. Corp.*, No. 15-822 (D. Nev.).

[3]   *Glob. Cash Access, Inc. v. NRT Tech. Corp.*, No. 15-822, 2018 WL 4566678, at *2 (D. Nev. Sept. 24, 2018).

To resolve Everi's motion to disqualify NRT's counsel in the ITC proceeding, the parties stipulated that NRT would withdraw its invalidity and unenforceability defenses based on Global Cash Access's alleged prior public use. (D.I. 14, Ex. C). Ultimately, the ALJ found that the independent claims of the '792 Patent were invalid under [35 U.S.C.] § 112 as indefinite, and that finding was affirmed. (D.I. 7, Ex. E, Ex. F). On June 1, 2016, Everi withdrew its ITC complaint. (*Id.*, Ex. G).

In the meantime, NRT tried unsuccessfully to institute a covered business method review before the [Patent Trial Appeals Board ("PTAB")]. The PTAB found that NRT had not shown it was more likely than not that the '792 patent was unpatentable.

That brings us to this case. NRT filed this action on April 30, 2019. (D.I. 1). The Amended Complaint contains two counts. (D.I. 7). Count 1 is a so-called Walker Process antitrust claim. In that count, NRT alleges that Everi violated the Sherman Antitrust Act, 15 U.S.C. § 2, by asserting the '792 Patent when it was acquired through fraud. Count 2 is a so-called sham litigation antitrust claim. In that count, NRT alleges that Everi violated the Sherman Act by instituting sham litigation against NRT and others. Both counts are premised on NRT's contention that Everi knew that the '792 Patent was invalid due to Global Cash Access's prior public use of a kiosk that practiced the claimed method. (*Id.* ¶¶ 20-49).

The Amended Complaint alleges that the relevant product market is gaming-specific kiosks, which does not include traditional ATMs. (*Id.* ¶ 15). According to the Amended Complaint, the gaming and casino industry is highly regulated. (*Id.*). As a result, gaming-specific kiosks are often subject to state and local regulations. Gaming specific kiosks also integrate with casino accounting systems that use software that has been certified by gaming authorities. According [to] the Amended Complaint, that makes them different and not reasonably interchangeable with traditional ATMs. (*Id.*). The Amended Complaint also alleges that casinos "demand" self-service kiosks because they reduce casinos' labor costs and the time it takes casino patrons to access cash and chips. (*Id.* ¶ 16). The Amended Complaint alleges that the relevant geographic market is "the United States." (*Id.*).

The Amended Complaint alleges that, between May 1, 2015 and January 15, 2018, Everi possessed and maintained monopoly power in the gaming-specific kiosk market. (*Id.* ¶ 17). It further alleges that, "at points" during that period, "Everi's market share for financial services related to the Relevant U.S. Market was estimated to be between 70 and 75%." (*Id.* ¶ 47).

Everi filed the pending motion to dismiss on September 17, 2019. (D.I. 12.)  On October 21, 2019, NRT filed its motion seeking leave to file a first amended complaint and to extend time to serve it. (D.I. 18.)

## II.   <u>LEGAL STANDARD</u>

When a complaint is challenged by a Rule 12(b)(6) motion to dismiss, the Court conducts a two-part analysis.  *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009).  First, the Court separates the factual and legal elements of a claim, accepting "all of the complaint's well-pleaded facts as true, but [disregarding] any legal conclusions."  *Id.* at 210-11.  Second, the Court determines "whether the facts alleged in the complaint are sufficient to show . . . a 'plausible claim for relief.'"  *Id.* at 211 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)).  To withstand a Rule 12(b)(6) motion to dismiss, a complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Iqbal*, 556, U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is facially plausible where "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 678.  "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'"  *Id.* (internal citations omitted).

"In deciding a Rule 12(b)(6) motion, a court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputed authentic documents if the complainant's claims are based upon these documents."  *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010).  The Court is not obligated to accept as true "bald assertions" or "unsupported conclusions and unwarranted inferences."  *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997).  Instead, "[t]he complaint must state enough facts to raise a reasonable expectation that discovery will reveal evidence of [each] necessary element" of a plaintiff's claim.  *Wilkerson*

*v. New Media Tech. Charter Sch. Inc.*, 522 F.3d 315, 321 (3d Cir. 2008) (internal citations omitted).

## III.   DISCUSSION

Defendants object to the Report's findings that the Amended Complaint "properly pleads monopolization claims for (i) Walker Process fraud and (ii) sham litigation relating to prior patent litigation concerning" the '792 patent.  (D.I. 35 at 1).  Defendants assert that the Report erred in no fewer than four respects: (1) finding that NRT's Walker Process claim satisfies the pleading standards of Rule 9(b); (2) finding that NRT's sham-litigation claim is viable; (3) finding that NRT pleaded market power in a relevant market; and (4) finding that NRT pleaded antitrust injury and harm to competition.  The Court addresses each alleged error below.

### A.      NRT Pleaded a Walker Process Claim with Particularity.

Defendants acknowledge that the Report properly invoked Rule 9(b) as the standard for the Walker Process claim, but argue that it failed "to apply this exacting standard" to NRT's claim properly.  (D.I. 35 at 1).  More specifically, Defendants argue that the Amended Complaint contains only "open-ended categories of individuals that purportedly withheld prior art – including the two inventors, 'one or more people substantially involved' in the prosecution of the '792 patent ([D.I. 7] ¶ 51), 'attorneys and agents' (*id.* ¶ 24), GCA ([Global Cash Access, Inc. ("GCA")] a predecessor company to Everi) and its 'officers and representatives' (*id.* ¶ 26), and 'others on behalf of and with the knowledge of GCA, and its officers, and agents' (*id.* ¶ 27)."  (D.I. 35 at 2).  And Defendants assert that the Report improperly deemed these "categories" sufficient.  (*Id.*).

Although Defendants are correct that non-specific references to a corporate entity or agents or attorneys alone are inadequate, the Amended Complaint (as the Report recognized (D.I. 34 at 10)) does more.  The Amended Complaint includes allegations that at least two individuals were

involved in the allegedly fraudulent procurement of the '792 Patent: its co-inventors Robert Cucinotta and Karim Maskatiya.  (D.I. 34 at 10).  The Amended Complaint alleges that Cucinotta and Maskatiya, unlike many inventors, held the highest level of authority within their organization, maintained organizational control and knowledge, and therefore had much to gain from deceiving the Patent Office.  According to the Amended Complaint, Cucinotta and Maskatiya: (1) were "absolutely knowledgeable" of their prior public use; (2) were involved in running GCA; (3) controlled GCA during the relevant period; and (4) failed to disclose the prior public use by GCA to the Patent Office.  (D.I. 7 ¶¶ 22-24; D.I. 34 at 10).  It is alleged that they deliberately withheld the information to avoid the one-year public use statutory bar.  (*See* D.I. 7 ¶¶ 22, 25, 26).  Thus, the Amended Complaint neither fails to identify the "who" by name nor leaves open the possibility that Cucinotta and Maskatiya were unaware of their omission.  D.I. 7 ¶ 23.

Defendants also argue that the Report erred in finding the allegations of knowledge and intent sufficient.  (D.I. 35 at 2).  "'[K]nowledge' and 'intent' may be averred" so long as there are "sufficient underlying facts from which a court may reasonably infer that a party acted with the requisite state of mind."  *Exergen Corp. v. Wal-Mart Stores*, Inc., 575 F.3d 1312, 1327 (Fed. Cir. 2009).  Given the allegations of Cucinotta and Maskatiya's knowledge, position, and motive, however, the Amended Complaint sufficiently alleges intent to deceive the Patent Office. Defendants' objections as to the Walker Process claims will thus be overruled.

**B.      NRT's Sham Litigation Claim Is Plausible.**

The Report correctly notes that "the question of whether litigation is objectively baseless generally involves factual issues that are inappropriate for evaluation at the motion to dismiss stage." (D.I. 34 at 12, n.25 (citing cases)).[4]  This case follows that general proposition.

As the Report noted, the parties dispute what pleading standard applies to the sham litigation claims.  This Court will follow the tack of Judge Hall and declines to resolve that dispute now.  Instead, the Court looks to whether the Amended Complaint sufficiently alleges sham litigation under the standard argued by Defendants, *i.e.*, that in *Professional Real Estate Investors, Inc. v. Columbia Pictures Industries, Inc.*, 508 U.S. 49, 56 (1993) ("PRE").  In *PRE*, the Supreme Court outlined a "two part definition of 'sham' litigation:

> First, the lawsuit must be objectively baseless in the sense that no reasonable litigant could realistically expect success on the merits. If an objective litigant could conclude that the suit is reasonably calculated to elicit a favorable outcome, the suit is immunized under *Noerr*, and an antitrust claim premised on the sham exception must fail. Only if challenged litigation is objectively meritless may a court examine the litigant's subjective motivation. Under this second part of our definition of sham, the court should focus on whether the baseless lawsuit conceals 'an attempt to interfere directly with the business relationships of a competitor,' through the 'use [of] the governmental process—as opposed to the outcome of that process— as an anticompetitive weapon.'"

*PRE*, 508 U.S. at 60-61 (internal citations omitted).

Here, contrary to Defendants' objections, the Amended Complaint alleges facts making it plausible that NRT asserted the '792 Patent in the Nevada and ITC cases knowing that each of

---

[4]     Contrary to Defendants' assertion, the Court does not read the Report as an "attempt[] to extract a general rule that *Noerr-Pennington* immunity should not be considered on the pleadings" (D.I. 35 at 4), but rather to recognize that often factual issues underlying sham litigation claims may preclude the grant of a motion to dismiss.

those cases was objectively baseless because the patent was unenforceable.  Specifically, the

Amended Complaint alleges:

> In addition to having knowingly and fraudulently acquired the '792 Patent, Defendants later committed patent misuse by asserting the '792 Patent against NRT. Defendants made such assertion with full knowledge that the '792 Patent was deceptively and fraudulently acquired. Defendants also did so knowing full well that the assertions raised in its fraudulently acquired patent were objectively baseless and had no basis of success either as a matter of infringement and/or (in)validity. Everi made these assertions with an aim to acquire or otherwise maintain significant and durable monopoly market power in the Relevant U.S. Market as well as to interfere directly with the business relationships of Plaintiff NRT and other competitors attempting entry into the Relevant U.S. Market or to otherwise expand in the same.

(D.I. 7 ¶ 28; *see also* ¶¶ 29-49).

Defendants argue that they had an objective basis because:

> (i) [] Judge Du found Everi's case was not objectively baseless and refused to award NRT's claimed attorneys' fees for defending Everi's patent and unfair competition claims under the less stringent standard for an exceptional case; (ii) [] the PTAB twice refused to initiate review of the '792 patent; (iii) [] NRT waived in both patent cases—and thus could not assert—the very argument that NRT contends made those cases objectively baseless; and (iv) [] Judge Du allowed Everi's unfair competition claims to continue even after Everi's patent was invalidated, supporting that the litigation was not baseless as a whole.

(D.I. 35 at 5-6).  The prior proceedings referenced, however, did not fully or finally address

whether the 1998 application for the '792 Patent was barred by GCA's 1996 prior public use; no

facts were presented, no discovery taken, and no determinations made.  (D.I. 34 at 12-14).

Although it may be that Plaintiffs cannot ultimately meet their burden for the sham litigation claim,

that is not the issue before the Court.  Plaintiffs have plausibly alleged such a claim and thus

Defendants objections will be overruled.

**C.      The Amended Complaint Sufficiently Pleaded Market Power In a Properly Defined Relevant Market.**

Defendants object to the Report's findings on market power and market definition for a number of reasons.  First, Defendants claim that the Report "applies an incorrect legal standard" in stating that a motion to dismiss should not be granted "unless the plaintiff's proposed [market] definition is inherently implausible."  (D.I. 35 at 7).  Defendants argue that in so stating, the Report failed to follow the holding in *Queen City Pizza, Inc. v. Domino's Pizza, Inc*., 124 F.3d 430 (3d Cir. 1997) (D.I. 35 at 7-8).  In footnote 30, however, the Report discusses a plaintiff's burden to demonstrate the defendant's possession of monopoly power in a relevant market and specifically references the very language that Defendants assert the Report ignored.  (*See* D.I. 34 at 15 n.30 (quoting *Queens City Pizza* for the proposition that a complaint may be dismissed for failure to plead a relevant market where the plaintiff "fails to define its proposed relevant market with reference to the rule of reasonable interchangeability and cross-elasticity of demand.")).  Moreover, the Report applied the standard of *Queen City Pizza*, finding that "NRT's proposed gaming-specific kiosk market is not inherently implausible"; "NRT's [amended] complaint alleges that gaming-specific kiosks differ from traditional ATMs and are not reasonably interchangeable with ATMs."  (D.I. 34 at 15; *see also* D.I. 34 at 4).  This Court agrees.

Second, Defendants object that the Report erred in finding that the Amended Complaint alleges a proper geographic market "cover[ing] sales in the United States regardless of where the seller is located," arguing that that is not the geographic market actually pleaded.  (D.I. 35 at 8 (quoting D.I. 34 at 16)).  The Amended Complaint alleges that "[t]he relevant geographic market is the United States, the geographic area . . . wherein potential buyers may rationally look for the aforementioned gaming-specific kiosks."  (D.I. 7 ¶ 16).  According to Defendants this "excludes from the alleged market kiosks purchased from sellers outside the United States."  (D.I. 35 at 8).

After making that conclusory statement, however, Defendants make no effort to explain why that must be so. Nor do Defendants explain why the Report's determination that the Amended Complaint, when read in its entirety, is susceptible to a reading that the alleged geographic market is defined with reference to the buyers' location and it covers sales in the United States regardless of where the seller is located is incorrect. In any event, the Court agrees with the Report that the Amended Complaint alleges a proper geographic market covering sales in the United States regardless of where the seller is located. (D.I. 34 at 16).

Finally, Plaintiffs object that the Report "errs in finding that the [Amended Complaint] alleges that Everi possessed market power even in its improperly defined market." (D.I. 35 at 8 (citing D.I. 34 at 16)). Specifically Plaintiffs object to Defendants' use of the phrase "financial services related to" when describing Everi's "between 70% and 75%" share in "the Relevant U.S. Market." (D.I. 35 at 9). Although the "related to" language is not a model of clarity, the Court agrees that when "read in light of the remainder of the [amended] complaint, which repeatedly alleges that Everi had market power in the Relevant U.S. Market . . . NRT has alleged enough." (D.I. 34 at 17).

Defendants' objections based on alleging market power in a properly defined relevant market will thus be overruled.

### D.      NRT Pleaded Antitrust Injury and Harm to Competition.

Defendants object to the Report's findings that antitrust injury and harm to competition were properly pleaded, asserting that "[a]llowing an antitrust claim to proceed without an allegation of harm to competition as a whole is contrary to Third Circuit precedent." (*See* D.I. 35 at 9-10). The crux of Everi's objection is the Report's reliance on *Transweb LLC v. 3M*, 812 F.3d 1295 (Fed. Cir. 2016) in which the Federal Circuit, applying Third Circuit law, affirmed a jury's

finding of Walker Process violation holding that litigation expenses could be an antitrust injury when the antitrust injury is patent-related. *Id. at* 1310. Although Defendants argue that the Third Circuit "has not yet considered" *Transweb* (D.I. 35 at 10), the Federal Circuit did, as noted above, apply Third Circuit law.

Moreover, Defendants assert that Plaintiffs' "sole allegation of antitrust injury is that Everi enforced the '792 patent" and that Plaintiffs offered no facts to support its assertions. (D.I. 35 at 9-10). Plaintiffs, however, alleged that Defendants would have "increase[d] its market share of the Relevant U.S. Market" (of 70-75%) and reduced competition if it had succeeded in enjoining NRT completely from the market. (D.I. 7 ¶¶ 47, 59). The issuance and enforcement of the '792 Patent "deterred or otherwise interfered with entry into or expansion in the Relevant U.S. Market" by potential competitors. (D.I. 7 ¶ 27; *see also* D.I. 7¶¶ 48-49). By ultimately losing the '792 Patent to invalidity, Everi's "market share has begun to decrease" thus suggesting that its market share was acquired through anticompetitive conduct. (D.I. 7 ¶ 47). Plaintiffs' Amended Complaint "plausibly allege[s] that the market as a whole was injured during the relevant period." (*See* D.I. 34 ¶¶ 17, 18 & n.42).[5] And Defendants' objection will be overruled.

## IV.  CONCLUSION

For the reasons stated above, Defendants' objections to the Report are OVERRULED and the Report is ADOPTED. Defendants' motion to dismiss (D.I. 12) will be DENIED. A form of order will follow.

---

[5]     As Defendants point out in their response to objections (D.I. 36 at 10), even if the Court were to accept Defendants' argument that the injury resulting from litigation costs corresponding to the anticompetitive conduct is not actionable, the Report found that Plaintiff's allegations that the market as a whole was injured are sufficient and Defendants did not contest that finding.